UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| JULIO SMITH PARRA, ) | |
| ) | |
| Plaintiff, ) | 3:11-cv-00913-LRH-WGC |
| ) | |
| v. ) | |
| ) | O R D E R |
| HOWARD SKOLNIK, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Before the Court is the Report and Recommendation of U.S. Magistrate Judge William G. Cobb (#85[1]) entered on July 1, 2013, recommending striking Plaintiff Julio Smith Parra's Sur-Reply (#82) filed on April 10, 2013, and granting in part and denying in part Defendants' Motion for Summary Judgment (#66) filed on January 30, 2013. Defendants filed an Objection to the Magistrate Judge's Report and Recommendation (#86) on July 15, 2013.

This action was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 1B 1-4 of the Rules of Practice of the United States District Court for the District of Nevada. The Court has conducted a *de novo* review of this case, and has fully considered Defendants' Objection, the pleadings and memoranda of the parties, and other relevant matters of record pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule IB 3-2. The Court determines that the

---

[1] Refers to the Court's docket number.

Magistrate Judge's Report and Recommendation (#85) shall be adopted and accepted as to Parra's Sur-Reply and to the extent it recommends granting Defendants' Motion for Summary Judgment in part. The Court further determines that Defendants' Objection shall be sustained and summary judgment in favor of Defendants shall be granted in full.

## I. Facts and Procedural History

Parra, an inmate in the custody of the Nevada Department of Corrections, filed an action under 42 U.S.C. § 1983 alleging civil rights violations in connection with a disciplinary action at Ely State Prison in May 2010. Doc. #6. On or about May 13, defendant Ronald Bryant charged Parra with possession of contraband peanut butter and jelly. Doc. #66, Ex. B and C. Parra was placed in "administrative segregation" that same day pending his disciplinary hearing on May 23. Doc. #66, Ex. B, C, D, F, and G. At the May 23 hearing, defendant Dann Doty found Parra guilty of a minor infraction, sentencing him to a ten-day ban from the prison canteen. Doc. #66, Ex. D and F. On May 26, Parra was transferred from administrative segregation to a "general population unit" in the prison. Doc. #66, Ex. F and G.

This series of transfers resulted in a change of living conditions for Parra. Prior to the May 13 incident, Parra resided in unit 8B, a housing unit specifically designated for inmate workers. Doc. #88, Ex. A.[2] At that time, Parra was employed in the prison "culinary." Doc. #6, p. 5. Parra claims that unit 8B is less restrictive than other units, allowing eight hours per day of "tier time," daily showers, daily use of the telephone, and daily recreation time. *Id.* The general population units to which Parra was transferred are more restrictive—inmates are confined for 23 hours per day and have fewer opportunities for showering, telephone use, and recreation. *Id.*; Doc. #88, Ex. A.

///

---

[2] In ruling on Defendants' Objection, the Court may consider evidence not presented to the Magistrate Judge. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002).

2

**II.     Discussion**

With respect to three alleged due process violations, the Magistrate Judge concluded that there was a genuine issue of material fact as to whether Parra's rights had been violated under *Sandin v. Conner*, 515 U.S. 472 (1995).  The due process clause of the Fourteenth Amendment is implicated when prison officials invade an inmate's liberty interest in "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  Courts consider the following factors in determining whether a restraint works an "atypical and significant hardship": (1) "whether the conditions of confinement mirrored those conditions imposed upon inmates in analogous *discretionary* confinement settings, namely administrative segregation and protective custody;" (2) the "duration and intensity" of confinement; and (3) "whether the change in the confinement would inevitably affect the duration of the prisoner's sentence." *Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013) (internal quotation marks omitted).

First, the Magistrate Judge found that "the conditions [Parra] faced during [his time in units 6 and 7] were particularly harsh in comparison with those in a regular general population unit." Doc. #85, p. 13.  Because Defendants neglected to explain in their Motion for Summary Judgment that inmates in units 6 and 7 endure the same conditions as inmates in other general population units, the Magistrate Judge mistakenly understood the conditions in units 6 and 7 to be particularly punitive relative to the conditions in other general population units.  However, as Defendants articulate in their Objection (and as Parra fails to refute), this is not the case.  Parra's conditions of confinement in general population units 6 and 7 were not "atypical . . . in relation to the ordinary incidents of prison life."  The ordinary incidents of prison life *are*, by and large, the conditions of the general prison population. *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (determining whether an inmate's conditions of confinement were "atypical" by comparing them to those of the general prison population).  Defendants present unrefuted evidence that the specialized unit 8B, from which Parra was transferred, holds 94 inmates and is designated a privileged unit relative to

3

1 the other general population units. Doc. #86, Ex. A. The units categorized as general
2 population—consisting of one-half the units in the prison and sharing the same conditions of
3 confinement as Parra's units—house 662 inmates. Doc. #86, Ex. A. Certainly a case may arise in
4 which the conditions applicable to a super-majority of the inmate population at a particular prison
5 are "atypical . . . in relation to the ordinary incidents of prison life." However, this is not that case.
6 Summary judgment in favor of Defendants on this aspect of Parra's due process claim is therefore
7 appropriate.

8 Second, the Magistrate Judge found that there was a factual dispute "as to whether Parra's
9 fourteen-day stay in administrative segregation pending and subsequent to his disciplinary
10 proceeding was part of the punishment he received after being found guilty of the disciplinary
11 charge, as Parra suggests, or whether he was placed in administrative segregation pending the
12 disciplinary proceeding and subsequent to the proceeding to await a bed opening in general
13 population, as Defendants suggest." Doc. #85, p. 11 (internal citations omitted). However, the
14 parties do not dispute that Parra was not found guilty of the contraband possession charge until ten
15 days after he was sent to administrative segregation. Doc. #78, p. 2; Doc. #78, Ex. C.
16 Furthermore, Parra failed to refute Defendants' evidence that he was placed into administrative
17 segregation pending the outcome of disciplinary charges and remained there only until bed space
18 was available in the general population. *See* Doc. #66, Ex. B, Ex. F.

19 Nevertheless, even if Parra's confinement in administrative segregation was punitive in
20 nature, it is immaterial to a determination of whether Parra had a constitutionally protected liberty
21 interest implicating the protections of the Fourteenth Amendment. As Defendants correctly aver,
22 the proper inquiry under *Sandin* is whether the conditions of confinement in administrative
23 segregation imposed "[an] atypical and significant hardship on the inmate in relation to the ordinary
24 incidents of prison life." 515 U.S. at 484. Here, Parra failed to present any evidence suggesting
25 that the conditions of his confinement in administrative segregation constituted an atypical and
26 significant hardship in relation to the ordinary incidents of prison life. *See* Doc. #78. And the

Ninth Circuit has repeatedly found that "administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *see also May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986)) (finding that "administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence"). Indeed, in *Sandin* itself, the Supreme Court found that 30 days in disciplinary segregation, when the conditions mirrored those in administrative segregation, did not constitute an atypical and significant hardship. 515 U.S. at 486. Thus, Parra's 14-day stay in administrative segregation does not constitute a violation of his due process rights.

Third, the Magistrate Judge found that an issue of fact existed as to whether Parra lost seven days of previously earned good time credit as a result of the disciplinary action. Doc. #86, p. 9. However, there is no evidence in the record to suggest that this was the case. Parra asserts only that he lost seven days of good time for the month of May 2010 that would have otherwise been deducted from his sentence and applied to his parole eligibility date. Doc. #78, p. 24. Defendants, however, clarify in their Objection that Parra lost only the prospective ability to earn seven days of good time work credit in May 2010 *after* he was transferred to administrative segregation. Doc. #86, p. 9. These were credits Parra would have earned had he not been fired from his job, not credits that he had already earned prior to being transferred to administrative segregation. Doc. #86, p. 9. Under *Sandin*, Parra's loss of his prospective ability to earn future work credits that might conceivably affect his future parole date is too attenuated to invoke the procedural guarantees of due process. 515 U.S. at 487. Furthermore, inmates do not have a protected liberty interest in prison employment. *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004); *see also West v. Beauclair*, 338 Fed. Appx. 716, 717 (9th Cir. 2009) (finding that the plaintiff "did not have a liberty or property interest in the prison job that he lost, or prison jobs that he was precluded from obtaining, as a result of his conviction"). As such, Parra could not have had a protected liberty interest in the prospective ability to earn good time work credit after he was fired from his job.

Because Parra failed to show that Defendants' alleged due process violations "posed an 'atypical and significant hardship in relation to the ordinary incidents of prison life,' or that they 'invariably affect[ed] the duration of his sentence,'" the Court sustains Defendants' objection on this ground. *Beauclair*, 338 Fed. Appx. at 717 (citing *Sandin*, 515 U.S. at 484 and *Myron v. Terhun*, 476 F.3d 716, 718 (9th Cir. 2007)). Summary judgment in favor of Defendants on the entirety of Parra's due process claim is thus granted. Finally, because the Magistrate Judge recommended denying summary judgment as to the remaining claims for supervisory liability only insofar as they are predicated on the due process claims, summary judgment is granted in favor of Defendants on these claims as well.

IT IS THEREFORE ORDERED that Plaintiff's Sur-Reply (#82) is STRICKEN.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (#66) is GRANTED in full.

IT IS SO ORDERED.

DATED this 25th day of September, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE